**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNICOM MONITORING, LLC, | CIVIL ACTION NO. 06-1166 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| CENCOM, INC., d/b/a AMERICAN DIGITAL MONITORING, DIGITAL DIVERTER.COM and SAVEONMYALARM.COM, | |
| Defendant. | |

**COOPER, District Judge**

Plaintiff, Unicom Monitoring, LLC ("Unicom"), brought this action against Defendant, Cencom, Inc. ("Cencom"), alleging infringement of its patent, U.S. Patent No. 6,366,647 ("'647 Patent"), which is directed to an Alarm Report Call Re-router. (See dkt. entry no. 1, Compl. at ¶¶ 5, 10-12.) This matter comes before the Court on Cencom's motion for summary judgment in its favor with respect to relief, both compensatory and equitable. (See dkt. entry no. 117, Mot. for Summ. J.) The Court held oral argument on April 10, 2013, and carefully reviewed the parties' submissions, and will now grant the Motion.

**BACKGROUND**

The Court will only present a brief synopsis of the relevant facts for resolution of the Motion because the Court writes mainly for the parties, which are familiar with the history of this case and the patent at issue.[1]

Cencom provides wholesale monitoring services in the capacity of a third-party vendor to alarm dealers whose accounts are located in Cencom's center. (See dkt. entry no. 117-2, Cencom Statement of Material Facts not in Dispute at ¶ 1 ("Cencom Statement").)  The '647 Patent pertains to "security systems, and more particularly to security systems that communicate with a central monitoring station via a telephone line." (Id. at ¶ 4.)  Unicom brought this action against Cencom on March 9, 2006, alleging infringement of the '647 Patent.  (See id. at ¶ 5.)  The Court previously granted summary

---

[1] Unicom neither disputes the facts as presented in Cencom's Statement of Material Facts not in Dispute, nor provides a counter-statement of facts in dispute: "Cencom's motion is merely legal argument based upon an alleged statement of material facts.  Unicom admits those facts for the purpose of this motion but submits that the facts are immaterial to the Court's determination of the legal issues involved." (See dkt. entry no. 120, Unicom Br. in Opp'n at 1 ("Unicom Opp'n Br.") (emphasis added).)  Accordingly, all facts discussed herein will be drawn from the statement presented by Cencom along with the Motion.  See also L.Civ.R. 56.1(a) ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion"); Smith v. Addy, 343 Fed.Appx. 806, 808 (3d Cir. 2009).  We thus, after ensuring that Cencom's statement accurately summarizes the record, provide citation to that statement.

judgment in Unicom's favor finding infringement of Claim 1 of the '647 Patent.  (See dkt. entry no. 50, 3-12-10 Mem. Op. at 2-3.)

The Pretrial Order sets forth the following contested facts, inter alia, as to what Unicom intends to prove with respect to damages:

(1) The number of sales, leases or other transfers of the DD2 from Cencom to a customer.
(2) The revenue derived by Cencom from sales, leasing, or monitoring accounts with the DD2.
(3) The profit derived by Cencom from the sales, leasing or monitoring of accounts with the DD2.
(4) Unicom is entitled to a reasonable royalty to compensate it for Cencom's infringement.
(5) Unicom is entitled to a reasonable royalty of 30% of the total revenue derived by Cencom from the sale, leasing, monitoring or other transfer of the DD2.

(Dkt. entry no. 80, 10-6-10 Pretrial Order at 3.)  Unicom indicated it intends to call Matthew J. Szapucki to "testify as to Unicom's ownership of the Patent-in-Suit, its policy not to license the '647 Patent, the various public means by which Cencom markets the DD2, Unicom's test marketing of its product and resulting sales, Unicom's damages and irreparable injury."  (Cencom Statement at ¶ 12.)  Unicom also indicated its intent to call James Maggs to "testify as to Unicom's ownership of the Patent-in-Suit, its policy not to license the '647 Patent, the various public means by which Cencom markets the DD2, Unicom's damages and irreparable injury." (Cencom Statement at ¶ 13.)

Unicom did not identify a damages expert, nor did it submit a damages report at any point in the duration of this case.  (See id. at ¶¶ 14-15.)  Unicom did not produce licenses for the patent-in-suit or for a comparable technology.  (See id. at ¶ 16.)  The only evidence in the record with respect to the reasonable royalty rate that Unicom asks the factfinder to apply comes from a short statement of attorney argument in Unicom's opposition papers and a brief calculation the Court painstakingly elicited during oral argument.  (See Unicom Opp'n Br. at 6-7 ("Since Cencom and Unicom were in the same business, Unicom would only have licensed Cencom for a royalty rate in the vicinity of 30% of revenues collected from DD2 customers, including monitoring fees."); see also Tr. of 4-10-13 Hearing at 26-27.)[2]

---

[2] This transcript is currently available in Chambers.  The following exchange represents the relevant portion:

> THE COURT: Mr. Peslak, from counsel table will you please tell me what damages you're seeking through your witness -- through your evidence and who on your side is going to articulate that magic number?
> MR. PESLAK: We're going to ask for 30 percent of [Cencom's] sales numbers, which is their Exhibit 32.
> THE COURT: Tell me what that is?
> MR. PESLAK: It is one -- it is a little short of $130,000.
> THE COURT: What is it?
> MR. PESLAK: The number?
> THE COURT: Counsel, if you were to diagram that sentence, you would understand that I can't understand you.

4

**ANALYSIS**

The parties dispute whether an expert is necessary to sustain a reasonable royalty damages award, and whether an injunction can issue where no damages have been awarded.  The Court will first provide the standard applied on a motion for summary judgment, and then address the issues in that order.

**I.    Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The movant has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).

---

MR. PESLAK: I'm sorry. [Cencom's] total of revenue for selling the product and monitoring it is approximately 128 or $129,000.
THE COURT: Over how long of a period?
MR. PESLAK: Over the period during this lawsuit when they sold the product. From 2004 to I believe it's 2010.
THE COURT: [Cencom is] not using the product anymore?
MR. PESLAK: They claim not to be using the product anymore.
THE COURT: So that's, what, $128,000 --
MR. PESLAK: Yes.
THE COURT: -- of total revenue?
MR. PESLAK: Yes.
THE COURT: So you want 30 percent of that?
MR. PESLAK: Yes.
THE COURT: Do the math for me.
MR. NEMIROFF: It is approximately $36,000, 37,000.

(Tr. of 4-10-13 Hearing at 26-27.)

Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The burden on the movant may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-movant's case. Celotex, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Williams v. Bor. of W. Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989). A non-movant asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute[.]" Fed.R.Civ.P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most

6

favorable to the non-movant and draw all reasonable inferences in that party's favor.  Scott v. Harris, 550 U.S. 372, 380 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  If the non-movant fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to judgment as a matter of law.  See Celotex, 477 U.S. at 322.

**II.  Use of an Expert to Prove a Reasonable Royalty Claim**

The statute governing the use of a reasonable royalty rate in patent damages is 35 U.S.C. § 284, which provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court . . . .  The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."  35 U.S.C. § 284.  The burden is on the patentee to show damages.  Devex Corp. v. Gen. Motors Corp., 667 F.2d 347, 361 (3d Cir. 1981).

Cencom argues that, because Unicom proffers no expert who can provide a reasonable basis for the reasonable royalty damages, Cencom is entitled to summary judgment in its favor with respect to damages, despite the Court's previous determination of Cencom's

liability for infringement.  (See dkt. entry no. 117-1, Cencom Br. in Supp. of Mot. for Summ. J. at 1-2 ("Cencom Br.").)  Cencom contends that Unicom has failed to produce admissible expert testimony to establish "an approximation of the market as it would have hypothetically developed, [which] requires sound economic and factual predicates." (Id. at 4.)

Cencom further argues that, where the patentee has presented little or no satisfactory evidence for the award of a reasonable royalty, the Court should award only those reasonable royalties that are supported by the evidence in the record.  (See Cencom Br. at 4.)  Cencom notes that, in the event the record does not support an award of any reasonable royalty damages, the Court of Appeals for the Federal Circuit has previously approved an award of no damages because "[t]he statute [35 U.S.C. § 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute." Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., 895 F.2d 1403, 1407 (Fed.Cir. 1990) (quoting Devex, 667 F.2d at 363).  Without citation, Cencom argues that, "[b]ecause of the complex and serious nature of damages, the determination of damages in patent litigation almost always requires the testimony of an expert witness." (Cencom Br. at 5.)  Relying heavily on a case

from the Northern District of Illinois, Cencom argues that the Court should rule that Unicom cannot meet its burden of proof without either expert reports or testimony regarding what would be an appropriate reasonable royalty.  (See id. (citing Apple, Inc. v. Motorola Inc., 869 F.Supp.2d 901 (N.D.Ill. 2012)).)[3]  Cencom notes that Unicom has neither expert reports nor testimony to offer the Court, only "Cencom's sales records and the self-serving and conclusory statements of Unicom owners".  (Id.)  Cencom argues that Unicom cannot rely on any of the evidence it identified as support in the Pretrial Order as a valid method of determining reasonable royalties.  (See id. at 5-6.)  Cencom argues that an expert is necessary to explain the reasonable royalty rate based on Cencom's sales records or Unicom's policy not to license the patent, and that testimony by Unicom's owners is inadmissible because it does not come from a "disinterested source."  (Id. at 6.)

Unicom responds that (1) the statute requires an award of reasonable royalty damages liability for Cencom's infringement, and (2) the Georgia-Pacific factors require consideration of factors other than the testimony of experts, including whether the infringement is willful.  (See Unicom Opp'n Br. at 1.)  Unicom focuses on the multifactorial test established in Georgia-Pacific

---

[3] An appeal from this decision to the Court of Appeals for the Federal Circuit is pending.  See Apple Inc. v. Motorola, Inc., Nos. 12-1548, 12-1549, dkt. entry no 1, Appeal Docketed (Fed.Cir. July 30, 2012).

<u>Corp. v. U.S. Plywood Corp.</u>, 318 F.Supp. 1116 (S.D.N.Y. 1970), arguing that no case cited by Cencom requires a judgment against it on the damages claim if it fails to proffer an expert on the issue. (See <u>id.</u> at 5.)  Unicom states, without legal or factual citation, that "[s]ince Cencom and Unicom were in the same business, Unicom would have only licensed Cencom for a royalty rate in the vicinity of 30% of revenues collected from DD2 customers, including monitoring fees." (<u>Id.</u> at 6-7.)  Unicom distinguishes <u>Apple</u> on the basis that the damages report excluded therein was based on a faulty consumer survey regarding specific features of complex machines containing patented as well as unpatented components, whereas here the infringing device is a knock-off of the patented device and there is no need to apportion the profits over separate features in order to establish a reasonable royalty. (See <u>id.</u> at 7.)

Cencom replies that Unicom (1) has not met its burden of proving damages and cannot produce either case law or evidence to support its position, and (2) is not entitled to an injunction. (See dkt. entry no. 122, Cencom Reply Br. in Further Supp. of the Mot. at 1 ("Cencom Reply Br.").)  Cencom states that "Unicom's Opposition is inherently flawed because it does not meet the minimum requirements under Fed.R.Civ.P. 56 necessary to defeat Cencom's Motion.  Unicom fails to present any genuine issue of

material fact for trial, either by way of an affidavit or declaration, or through reference to evidence in the record." (See id.)  Cencom then argues that, while entitled to damages, Unicom has failed to prove the damages, thus warranting summary judgment in Cencom's favor.  (See id. at 1-2.)  Cencom notes that Unicom's only reference to how damages should be calculated is the statement regarding the "30% royalty rate", which is unsupported by either testimony in the record, or affidavits or certifications accompanying the opposition papers.  (See id. at 2.)  Further, Cencom argues that Unicom fails to show how the Georgia-Pacific factors are implicated, thus failing to meet Unicom's burden of raising a genuine factual dispute to defeat a motion for summary judgment.  (See id. at 2-3.)

A patentee requesting damages carries the burden of proof that its proposed royalty would be reasonable.  See Lindemann, 895 F.2d at 1406.  In Lindemann, the district court held Lindemann's patent to be infringed and awarded only $10,000 as a reasonable royalty in damages, despite Lindemann's expert's opinion that "a reasonable royalty would be 75% - 85% of [Defendant's] targeted gross profit, yielding a royalty rate of 20% - 25% of the net selling price of the entire machine and sales of spare parts, resulting in a damage award of $179,844 - $224,805."  Id. at 1404.  The Court of Appeals for the Federal Circuit upheld the district court's award because:

11

> [w]hen lost profits are the measure, the amount is
> normally provable by the facts in evidence or as a
> factual inference from the evidence.  When a "reasonable
> royalty" is the measure, the amount may again be
> considered a factual inference from the evidence, yet
> there is room for exercise of a common-sense estimation
> of what the evidence shows would be a "reasonable"
> award.  One challenging only the court's finding as to
> amount of damages awarded under the "reasonable royalty"
> provision of § 284, therefore, must show that the award
> is, in view of all the evidence, either so outrageously
> high or so outrageously low as to be unsupportable as an
> estimation of a reasonable royalty.  Here Lindemann, who
> bore the burden and yet failed to adduce evidence
> dictating a particular amount, left the magistrate with
> the widest range of choice.

Id. at 1406.  Patent-holder Lindemann presented only one witness as

the basis for its damages claim, "patent attorney Enlow", who

> gave his opinion that a reasonable royalty would be
> 20% - 25% of the sale price of the entire machine.
> Lindemann implies but does not, as it cannot, argue that
> the magistrate was bound to accept that opinion.
> Indeed, the record reflects fully adequate bases for the
> magistrate's rejection of that opinion.  As brought out
> on cross-examination, Enlow's opinion was based on a
> nonexistent or at best woefully incomplete understanding
> of the market and on an estimate of anticipated profits
> that bore no relation to actual profits, Enlow having no
> knowledge of the latter.

Id. at 1407.  The Court of Appeals for the Federal Circuit stated

that, while the statute does not require a patentee to "show the

fact of damage" if infringement is proven or admitted, "that does

not mean that a patentee who puts on little or no satisfactory

evidence of a reasonable royalty can successfully appeal on the

ground that the amount awarded by the court is not 'reasonable' and

therefore contravenes section 284."  Id. at 1407.

A distinction exists between the fact of damages and proving an amount to be awarded.  Although the statute requires an award of a reasonable royalty when there is infringement because such infringement establishes the <u>fact</u> of damages, "to argue that this requirement exists even in the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute."  <u>Devex</u>, 667 F.2d at 363.  In another case where the patent was held valid and infringed, the Court of Appeals for the Federal Circuit upheld a district court's award of no damages but a permanent injunction.  <u>Gustafson, Inc. v. Intersystems Indus. Prods., Inc.</u>, 897 F.2d 508, 509 (Fed.Cir. 1990) (finding "no reversible error in the district court's . . . awarding no damages to [plaintiff] because none were proven.").

The appropriate statutory measure of damages for patent infringement is "the difference between the patent owner's pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred."  <u>Riles v. Shell Exploration & Prod. Co.</u>, 298 F.3d 1302, 1311 (Fed.Cir. 2002). This measurement requires that the patentee present evidence to "reconstruct the market, a necessarily hypothetical exercise, to project economic results that did not actually occur."  <u>Id.</u>  The court cautioned that "to prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the

13

nature of the market and likely outcomes with infringement factored out of the economic picture." Id.  The court examined the patentee's proposed model for determining a reasonable royalty and noted several problems: (1) the model was based on the value of the entire product, while the patent only covered a limited portion of the product; (2) the patentee did not present evidence that the royalty rate was reflective of an agreement between the two companies that was reached through a hypothetical negotiation at a time before the infringement occurred; and (3) the agreement would violate the patentee's established licensing practices.  Id. at 1312-13.  These flaws were fatal to the model; the court vacated the district court's award of damages as unsupported by the evidence in the record.  Id. at 1305, 1313.

Competent evidence of damages for a reasonable royalty rate does not necessarily require expert testimony, contrary to Cencom's position.  (See Cencom Br. at 2-3, 5.)  A district court's order was reversed after it excluded the plaintiff's expert's testimony for Daubert reasons, and then found that the plaintiff was not entitled to damages as a matter of law because it "had not carried its burden to establish damages."  Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370 (Fed.Cir. 2003) (holding that "district court erred in concluding that Dow did not carry its burden to establish damages because it failed to provide expert testimony on the

damages issue"). The Court of Appeals clarified that "section 284 is clear that expert testimony is not necessary to the award of damages, but rather may be received as an aid." Id. at 1382. Quoting Lindemann, the court cautioned the district court that its obligation to award damages for infringement under section 284 did not obviate a patentee's burden to present evidence demonstrating the amount to be awarded. Id. If the plaintiff proved infringement of its patent, "the district court should consider the so-called Georgia-Pacific factors in detail, and award such reasonable royalties as the record evidence will support." Id.

Cencom relies heavily on Apple, which it claims stands for the principle that a patent holder cannot request reasonable royalty damages without the testimony of an expert to support that claim. (See Cencom Br. at 2-3, 5.) In response, Unicom distinguishes the case, and argues that the case does not require judgment against it on the damages claim as a matter of law because the patentee did not provide an expert report. (See Unicom Opp'n Br. at 7.) As a decision from the Northern District for the District of Illinois, the decision is not binding on this Court, but the Court finds it to be persuasive authority in light of its thorough analysis and extensive discussion.

The Apple case, which was decided by Circuit Judge Posner, sitting by designation, provided no decision on infringement

because the lack of proof of damages required dismissal of the case. Apple, 869 F.Supp.2d 901. After a Daubert hearing in which the court excluded three experts, the court determined that the record evidence would not permit a reasonable royalty award. Id. at 905. The court noted that a witness testifying with respect to reasonable royalty damages should have some knowledge about the relevant market's economic or factual predicates for fleshing out the hypothetical negotiation: "[a] competent damages witness would be one who was involved in the procurement of chips, or who advised as a consultant on the choice of chips; there is no suggestion that [the proposed expert] has such experience." Id. at 905-06; see also Riles, 298 F.3d at 1311 ("this analysis necessarily involves some approximation of the market as it would have hypothetically developed absent infringement. This analysis, in turn, requires sound economic and factual predicates."). In Apple, the proffered damages witness could not determine the portion of the price that should be attributed to the patented part. 869 F.Supp.2d at 905-06. The court noted that for "a plaintiff to withstand summary judgment[, he] must present enough evidence to make a prima facie case -- that is, enough evidence to justify a trier of fact in finding in favor of the plaintiff if the defendant presents no contrary evidence." Id. at 906. The evidence presented by the damages witness must eliminate guesswork or speculation in the

16

damages award.  Id. at 907.  The court noted that providing such
evidence may require presenting one fact witness for a computer
scientist's description of the chips and another witness who was
"involved more in a financial part of the company or the selling
part, the marketing or the procurement [part]."  Id.

The court also addressed Apple's argument that "any act of
infringement, even if it gives rise to no measurable damages, is an
injury entitling it to a judgment."  Id. at 908.  After a review of
tort, contract, and patent law issues, the court determined that
nominal damages are not available if there is an absence of any
evidence from which a court may derive a reasonable royalty.  Id.
at 910 (quoting Lindemann, 895 F.2d at 1407; Devex, 667 F.2d at
363).

Cencom proffered a recent case from the District of Delaware
that excluded the testimony of a co-inventor of a patent, whom the
patentee proffered for testimony about: (1) the benefits of the
patent-in-suit; (2)the legal assignments of the patent-in-suit; (3)
the witness's prior negotiations with the defendant; (4) the
witness's conduct in a hypothetical negotiation; and (5) the
witness's knowledge of prior negotiations with the defendant with
respect to other patents.  AVM Techs., LLC v. Intel Corp., No. 10-
610, 2013 WL 656745, at *15-16 (D.Del. Feb. 21, 2013).  Following
objections by defendant to numbers 3 and 4, the court reviewed

17

Lindemann and Devex and stated that "[although] reasonable royalty damages must be awarded if infringement is found, . . . [this] does not mean that the rules of evidence do not apply to proposed testimony." Id. at *18.  The court concluded that the witness was being offered for improper expert testimony because he would discuss calculations about how to reach a reasonable royalty.  See id. at *18-19 ("These calculations are the province of expert analysis.") (citing Veritas Operating Corp. v. Microsoft Corp., No. 06-0703, 2008 WL 657936, at *33 (W.D.Wash. Jan. 17, 2007) (lay witness may not offer an opinion on ultimate patent damages, "including determining a reasonable royalty")).  Further, the witness was also proffered for improper expert testimony because he would delve into hypothetical situations, outside of his personal knowledge.  See id. at *19 ("[The witness's] testimony as to what would have happened in a hypothetical negotiation would not be based on his personal knowledge and, therefore, is not admissible.").

The court determined that, although the witness would be permitted to testify as to those facts within his personal knowledge, the expert and hypothetical testimony called for in numbers 3 and 4 were inadmissible.  Id. at *7.  The court initially reserved its decision on the pending summary judgment motion when it issued its opinion excluding this expert, but later granted

18

summary judgment for the defendant when plaintiff had no evidence with which to prove its reasonable royalty damages theory.   AVM Techs., LLC v. Intel Corp., No. 10-610, dkt. entry no. 294, at *3 (D.Del. Mar. 29, 2013).

The Court has reviewed the dearth of evidence in the record on which Unicom intends to present its reasonable royalty theory of damages to the factfinder.  Without providing either factual or legal authority or economic or factual predicates, Unicom has demanded a royalty rate of "30% of the total revenue derived by Cencom from the sale, leasing, monitoring, or other transfer of the DD2." (10-6-10 Pretrial Order at 3.)  In the seven years over which this litigation has unfolded, Unicom never established a reasonable royalty calculation, nor named a specific amount that it demanded in damages, until the Pretrial Management Conference with the Court, held a mere two weeks before trial was set to commence. (See Tr. of 4-10-13 Hearing at 26-27.)  As identified in the Pretrial Order, Unicom did not name any expert witness, and indeed only intends to present two fact witnesses, Matthew Szapucki and James Maggs.  (See 10-6-10 Pretrial Order at 3.)  At oral argument, counsel for Unicom indicated that these witnesses would provide somewhat broader testimony, as would be necessary to support a reasonable royalty calculation: "My clients are going to talk about a hypothetical negotiation.  They're going to talk about, you know,

what happened in this case and what their policies and plans were
in 2004 when the infringement began." (Tr. of 4-10-13 Hearing at
16; see Cencom Statement at ¶ 13 (noting that Unicom intends to
call James Maggs to "testify as to Unicom's ownership of the
Patent-in-Suit, its policy not to license the '647 Patent").)

The Court finds that Unicom has not established that a genuine
issue of material fact exists that requires a factual
determination.  Unicom does not have an expert to guide a
factfinder through a hypothetical negotiation process to reach a
reasonable royalty rate as a damages award.  Rather, the evidence
Unicom intends to present regarding the hypothetical negotiation is
contrary to the basic premise of those negotiations.  See Riles,
298 F.3d at 1312 ("A 'reasonable royalty' contemplates a
hypothetical negotiation between the patentee and the infringer at
a time before the infringement began." (emphasis added)); see also
Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078
(Fed.Cir. 1983) (stating that a "reasonable royalty may be based
upon an established royalty, if there is one, or if not upon a
hypothetical royalty resulting from arm's length negotiations
between a willing licensor and a willing licensee" (emphasis
added)).  Unicom does not intend to present evidence that is
competent to establish a reasonable royalty as it must be
calculated: the witnesses will be testifying to the wrong time

20

period; Unicom's policy of not licensing the patent is at odds with the presumed voluntary negotiation; Unicom does not have an expert to delve into hypotheticals; Unicom does not have an analogous practice of licensing that can be uniformly applied; and Unicom has no rationale to support its suggested reasonable royalty calculation.

Although there are many Georgia-Pacific factors which the Court can consider, the failure to present competent evidence regarding how the factfinder should perform the reasonable royalty calculation is fatal to Unicom's claim for reasonable royalty damages. A factfinder cannot be asked to speculate from numbers unsupported by law and divorced from expert guidance, but rather the factfinder needs either clear guidance from an expert about how to apply complex calculations or simple factual proofs about what this patentee has previously accepted in factually analogous licensing situations. See Lindemann, 895 F.2d at 1407; see also Devex, 667 F.2d at 361 (holding that, although plaintiff failed to adduce proof to support its proposed reasonable royalty rate, the facts demonstrated that the plaintiff had previously made an industry-wide offer of license for a fixed amount of .75% and that offer was sufficient evidence to support a royalty rate for .75%).

The Court therefore holds that, without competent proof upon which to make a reasonable damages claim, Unicom cannot meet its

burden of proving the amount of damages, even if it is entitled to an award of damages.  Accordingly, the Court grants summary judgment in favor of Cencom with respect to monetary damages.

## III. Equitable Relief without Damages Proof

Cencom argues that Unicom is not entitled to a permanent injunction because Unicom has not demonstrated that damages are an inadequate remedy.  (See Cencom Br. at 7.)  Cencom argues that Unicom cannot claim "damages are inadequate as a remedy" when the inadequacy of the damages results from Unicom's failure to demonstrate what damages were appropriate through the use of an expert.  (See id. at 7-8.)

Unicom responds that Cencom failed to address the factors considered for issuing a permanent injunction, as established by eBay Inc. v. MercExchange LLC, 547 U.S. 388 (2006).  (See Unicom Opp'n Br. at 8.)  Unicom argues that the irreparable injury of violated patented rights establishes a right to an injunction for several reasons: (a) Cencom is Unicom's direct competition, creating a "competitive injury" not easily quantified or thus compensable; (b) Unicom built its business around the patented product and the loss of exclusivity "delayed" the start-up of that business; (c) the balance of hardships and equities favors an injunction because Cencom stole Unicom's inventive efforts; (d) any effect on Cencom's business should be discounted, even if Cencom

stops infringing; and (e) public interest favors protection of
patents, which here would best be served through the injunction.
(See id. at 8-9.)

Cencom simply replies that Unicom is not entitled to an
injunction because it cannot prove damages.  (See Cencom Reply Br.
at 5 (citing Apple, 895 F.Supp.2d at 923 (holding that neither
party is entitled to an injunction because neither has shown that
damages would not be an adequate remedy)).)  Cencom further argues
that the Court does not need to reach the eBay factors where this
essential element has not been met.  (See id.)

The grant of injunctive relief is not automatic, or even a
presumptive result of a finding of liability, even in a patent
case.  See eBay, 547 U.S. at 391-92.  The standard for deciding
whether to grant such relief in patent cases follows the normal
equity standard.  Id. at 394.

> According to well-established principles of equity, a
> plaintiff seeking a permanent injunction must satisfy a
> four-factor test before a court may grant such relief.
> A plaintiff must demonstrate: (1) that it has suffered
> an irreparable injury; (2) that remedies available at
> law, such as monetary damages, are inadequate to
> compensate for that injury; (3) that, considering the
> balance of hardships between the plaintiff and
> defendant, a remedy in equity is warranted; and (4) that
> the public interest would not be disserved by a
> permanent injunction.  The decision to grant or deny
> permanent injunctive relief is an act of equitable
> discretion by the district court . . . .

Id. at 391 (internal citations omitted).

The plaintiff-patentee must demonstrate that the alternative of monetary relief would be inadequate in order to receive a grant of an injunction, with few exceptions, none of which are implicated here.  See Apple, 869 F.Supp.2d at 915.  As the court in Apple recognized, where the inadequacy of damages stems from one party's failure to present proof establishing the amount of damages to be awarded, this does not satisfy the second prong of the eBay inquiry.  See id. at 915-17.  As stated by the court, the issue in Apple was similarly "not that damages cannot be calculated, but that on the eve of trial, with the record closed, it became apparent that the parties had failed to make a responsible calculation."  Id. at 916.  The court further differentiated between the failure of proof and when damages would truly be an inadequate remedy:

> In fact neither party is entitled to an injunction.
> Neither has shown that damages would not be an adequate
> remedy.  True, neither has presented sufficient evidence
> of damages to withstand summary judgment -- but that is
> not because damages are impossible to calculate with
> reasonable certainty and are therefore an inadequate
> remedy; it's because the parties have failed to present
> enough evidence to create a triable issue.  They had an
> adequate legal remedy but failed to make a prima facie
> case of how much money, by way of such remedy, they are
> entitled to.  That was a simple failure of proof.

Id. at 915.

Other considerations implicated in determining whether monetary damages would be adequate also involve the other elements

24

of the eBay test.   See Robert Bosch LLC v. Pylon Mfg. Corp., 659

F.3d 1142 (Fed.Cir. 2011).   In Robert Bosch, the court considered

other factors in assessing the adequacy of monetary damages:

> There is no reason to believe that Pylon will stop
> infringing, or that the irreparable harms resulting from
> its infringement will otherwise cease, absent an
> injunction. Cf. Reebok Int'l, Ltd. v. J. Baker, Inc., 32
> F.3d 1552, 1557 (Fed.Cir. 1994) (recognizing that
> "future infringement . . . may have market effects never
> fully compensable in money").   More importantly, the
> questionable financial condition of both Pylon and its
> parent company reinforces the inadequacy of a remedy at
> law.   A district court should assess whether a damage
> remedy is a meaningful one in light of the financial
> condition of the infringer before the alternative of
> money damages can be deemed adequate. While competitive
> harms theoretically can be offset by monetary payments
> in certain circumstances, the likely availability of
> those monetary payments helps define the circumstances
> in which this is so.

Id. at 1155-56.   The severity of the irreparable harm is closely

intertwined with the adequacy of monetary damages, as is the

likelihood of receiving the monetary damages.   Id.

There is no likelihood of irreparable harm demonstrated from

the facts on the record.   To the contrary, as indicated by counsel

for both parties during oral argument, Cencom ceased using the

infringing product as of 2010.   (See, e.g., Tr. of 4-10-13 Hearing

at 27.)   Moreover, the question of whether Unicom is "likely" to be

paid the monetary damages assessed is irrelevant because the Court

has determined that Unicom failed to prove the amount of damages

that it was entitled to, and thus no damages are owed.   (See supra

25

at section II.)  The factors of the test as a whole favor denying the injunction, as the record indicates that Cencom is no longer infringing the product, Unicom is not currently producing the product, and Cencom does not owe monetary damages it would be unlikely to produce as adequate compensation.  Accordingly, Unicom's request for injunctive relief is denied and Cencom's motion for summary judgment in its favor with respect to equitable relief is granted.

### CONCLUSION

Based upon the reasons stated, the Court will grant the Motion for summary judgment in favor of Cencom and against Unicom on Unicom's claims for damages and for a permanent injunction.  We anticipate that an eventual final judgment embodying these rulings will be with prejudice as to all events occurring in the past and through the time of entry of final judgment.  See Apple, 869 F.Supp.2d at 924 ("It would be ridiculous to dismiss a suit for failure to prove damages and allow the plaintiff to refile the suit so that he could have a second chance to prove damages.  This case is therefore dismissed with prejudice"); Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1365-66 (Fed.Cir. 2000) (providing the four-factor test for issue preclusion, "which serves to bar the revisiting of 'issues' that have been already fully litigated").

The Court will not enter a final judgment at this time, as this is not the final adjudication of all claims in the case.  See Fed.R.Civ.P. 54(b).[4]  Cencom's counterclaim for a judgment of invalidity currently remains viable.  (See 10-6-10 Pretrial Order at 4.)  As represented by counsel at a status conference with the Court on April 18, 2013, Cencom also has an Offer of Judgment outstanding, and Cencom seeks an award of counsel fees under 35 U.S.C. § 285 (concerning extraordinary cases).  (See 10-6-10 Pretrial Order at 4.)[5]  Unicom has withdrawn its claims for willful infringement and extraordinary case relief.  (See dkt. entry no. 132, 4-15-13 Letter.)  However, based upon the favorable ruling Unicom obtained on the issue of Cencom's infringement of the '647

---

[4] Federal Rule of Civil Procedure 54(b) provides:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed.R.Civ.P. 54(b).

[5] Although the Offer of Judgment was not placed on the docket, the offer was communicated to the Magistrate Judge as of January 26, 2011.

Patent, it appears that Unicom may yet seek an award of taxed costs under 35 U.S.C. § 284.  <u>See</u> 28 U.S.C. § 1920.

The Court will enter an appropriate Order on the Motion.


                                    s/ Mary L. Cooper
                                    **MARY L. COOPER**
                                    United States District Judge

Date:      April 19, 2013

28